978 F.2d 744
 298 U.S.App.D.C. 247
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
LOUISIANA ASSOCIATION OF INDEPENDENT PRODUCERS AND ROYALTY
OWNERS, Petitioner,
v.
DEPARTMENT OF ENERGY, Respondent,
Long Island Lighting Company Tennessee Gas Pipeline Company
Alberta Northeast Gas Limited Commonwealth Gas
Company, Intervenors.
 No. 91-1233.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 22, 1992.
 
 Before MIKVA, Chief Judge, and WALD and RUTH BADER GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the petition for review of orders of the Assistant Secretary of Fossil Energy of the Department of Energy. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that in No. 91-1233, the petition for review is denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely-filed petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 The Louisiana Association of Independent Producers and Royalty Owners ("LAIPRO") petitions for review of the Department of Energy's ("Department" or "DOE") Office of Fossil Energy's ("OFE") decision to permit, without notice and comment, certain modifications to a long-term authorization to import natural gas from Canada. The authorization, DOE/FE Opinion and Order 368, 1 FE p 70,285 (Jan. 11, 1990), approved five separate agreements under which eighteen local distribution companies ("LDCs") contracted to import 397,100 Mcf/day of Canadian gas for fifteen years.[1] The LDCs formed a Canadian corporation, Alberta Northeast Gas, to purchase and import into the United States all of their combined authorizations. Order 368 set the overall ceiling for all imports under the order and specified the amounts each individual LDC was authorized to purchase.
 
 
 5
 In 1991, parties to these agreements filed with the OFE two applications seeking modifications in the underlying import authorization, including several transfers of authorized volumes from one LDC to another, the extension for three years of two pipeline supply contracts, and a price increase to reflect the imposition of a delivery pressure toll. LAIPRO asserts that the Department violated its own regulations by failing to allow notice and comment before approving these changes.[2]
 
 
 6
 The parties to this action disagree about which of two DOE regulations governs the Department's approval of these changes. LAIPRO relies on the first, which provides:
 
 
 7
 Any person seeking authorization to import or export natural gas into or from the United States, to amend an existing import or export authorization, or seeking any other requested action, shall file an application with the [Office of Fossil Energy].
 
 
 8
 10 C.F.R. § 590.201 (emphases added). Other sections of the regulations provide that whenever the Department considers such an amendment or other requested action, it must allow the opportunity for comment and possible intervention. 10 C.F.R. §§ 590.102, 590.301, 590.303, 590.304. LAIPRO argues that the changes at issue here constituted amendments and therefore triggered the agency's obligation to allow at least the opportunity for comment.[3] The agency's own actions provide some support for this view, as it treated the filings as "amendments" and acted on them as such, issuing orders to amend the underlying authorization. DOE/FE Opinion and Order 368-C, 1 FE p 70,426 (Mar. 18, 1991); DOE/FE Opinion and Order 368-D, 1 FE p 70,504 (Nov. 15, 1991).
 
 
 9
 The Department, nonetheless, argues that these changes actually fall within a second section of its regulations, which provides for notice filings:
 
 
 10
 Reports of changes. Any person authorized to import or export natural gas has a continuing obligation to give the Assistant Secretary written notification, as soon as practicable, of any prospective or actual changes to the information submitted during the application process upon which the authorization was based, including, but not limited to, changes to: the parties involved in the import or export arrangement, the terms and conditions of any applicable contracts, the place of entry and exit, the transporters, the volumes accepted or offered, or the import or export price.... Compliance with this section does not relieve an importer or exporter from responsibility to file the appropriate application to amend a previous import or export authorization under this part whenever such changes are contrary to or otherwise not permitted by the existing authorization.
 
 
 11
 10 C.F.R. § 590.407. In the Letter Rulings that accompanied the challenged orders, the agency invoked this provision. The Department contends that the requested changes were permitted by and consistent with the existing authorization and therefore came within § 590.407, requiring only a notice filing, regardless of how the parties or the agency captioned them. The agency further relies on a distinction between "technical" and "substantive" amendments--a distinction that appears nowhere in the relevant statute, regulations, or policy guidelines. See 15 U.S.C. § 717b (1988); 10 C.F.R.Part 590 (1991); 49 FED.REG. 6684 (Feb. 22, 1984).
 
 
 12
 We owe deference to the Department's interpretation of its own regulations. See 15 U.S.C. § 717r(b) (1988); Permian Basin Area Rate Cases, 390 U.S. 747 (1968); New England Fuel Inst. v. Economic Reg. Admin., 875 F.2d 882, 887 (D.C.Cir.1989). We have made clear, however, that an agency does not have the authority "to play fast and loose with its own regulations" or to ignore a regulation that "does not give [it] a quick way to reach a desired result...." Panhandle Eastern Pipe Line Co. v. FERC, 613 F.2d 1120, 1135 (D.C.Cir.1979). We have a responsibility to insure that the agency has given a plausible reading of its own regulations and " 'to assure that the agency has given reasoned consideration to all the material facts and issues.' " West Va. Pub. Servs. Comm'n v. DOE, 681 F.2d 847, 859 (D.C.Cir.1982) (quoting Greater Boston Television Corp. v. FCC, 444 F.2d 842, 851 (D.C.Cir.1970), cert. denied, 403 U.S. 907 (1978)).
 
 
 13
 In this case, we affirm DOE's actions on the ground that the changes involved do reasonably fall within the orbit of notice changes. A close reading of Order 368 reveals that it first authorizes the overall ceiling for all gas that can enter the country under its terms. It then incorporates as part of the total authorization the five subsidiary agreements that correspond to the five supply contracts. Each agreement authorizes participating LDCs to import their "pro rata portion[s] of the total authorization, as stipulated in the gas purchase contract." For each agreement, the order authorizes the participating LDCs to transfer their daily volume authorizations among themselves, provided that the total gas imported does not exceed the total authorized for that agreement. This authority, therefore, makes the assignments at issue arguably "consistent" with the underlying authorization.
 
 
 14
 Although we believe that these assignments, as well as the extension for three years of two supply contracts,[4] fall close to the line dividing those changes that require amendment and those that require mere notice filing, we ultimately defer to the agency's expertise in making such close calls. Moreover, we recognize that the agency does possess the authority to approve the flexible, open-ended arrangement it claims to have structured here--one which clearly would have permitted these adjustments without agency amendment to the authorization or the procedures that accompany it.
 
 
 15
 We are not without some misgivings, however, about the Department's lack of care and precision in adhering to the fine distinctions in its own regulations. The agency effectively invited LAIPRO's challenge when it approved the filings as "amendments" without providing the procedures required by its own regulations to accompany such amendments. The resulting confusion is hardly ameliorated by the agency's reliance on a novel and unsupported distinction between "technical" and "substantive" amendments. We will not, however, "mistake clumsy agency nomenclature for unlawful agency action." Panhandle Eastern Pipe Line Co. v. FERC, 613 F.2d at 1148 (Wright, C.J., concurring and dissenting). Finally, we are unimpressed with the Department's after-the-fact assertion that the transfers among LDCs were "consistent" with Order 368 because the order merely authorized the overall import volume, not the specific volume for each LDC. The Department argued that the individual allocations to each LDC were included only to "identify" those LDCs that were parties to the order, not to specify the amount each was authorized to purchase. The plain language of the order, however, repeatedly referred to the daily amounts each LDC was "authorized" to purchase. The Department would have been better advised to acknowledge candidly that the order set individual LDC authorizations, but permitted some transfers among LDCs.
 
 
 16
 We caution that an agency's discretion in drafting and interpreting its own procedural regulations does not excuse sloppiness in following them. In this instance, OFE has come perilously close to the line. Certainly where an agency has set its own procedures for recording or approving modifications to its orders, it is not asking too much to expect the agency's clear and conscientious compliance with those procedures.
 
 
 
 [1]
 Order 368 granted approval conditionally pending submission and review of an Environmental Impact Statement. 1 FE p 70,285, at 71,221. DOE/FE Opinion and Order 368-A granted final approval. 1 FE p 70,370 (Nov. 15, 1990)
 
 
 [2]
 The parties applied for, and the Department approved, one additional amendment--the inclusion of a new party to the order--for which the Department did allow notice and comment. DOE/FE Opinion and Order 561, 1 FE p 70,515 (Dec. 19, 1991)
 
 
 [3]
 LAIPRO also challenged the Department's failure to provide additional procedures, including discovery and a trial-type hearing. Because of the Department's broad discretion to grant or deny such procedures, see 10 C.F.R. §§ 590.310, 590.313, we find these challenges without merit
 
 
 [4]
 The Department found the extension of supply contracts consistent with the underlying authorization because it conformed Order 368 to grant the full fifteen-year term originally contemplated by the parties, see 51 FED.REG. 33,108, at 33,109 (Sept. 18, 1986), and it provided a uniform termination date for the five supply contracts that comprised the overall arrangement. There was no serious challenge to the Department's finding that the addition of the pressurization toll, which was accepted by all contracting parties, was consistent with and permitted by the renegotiation clause of Order 368, and was, moreover, regulatorily mandated